Okay, Mr. Lacker. May it please the Court. The only issue in dispute in this appeal is whether the Jorgensen reference inherently discloses a magnification of the projection X-ray stage between 1 and 10 times. The patent refers to that magnification as projection magnification, geometrical magnification, or geometric magnification. That's acknowledged in the red brief, for example. We gave you the Smith-Klein case. Absolutely. It suggests that a compound is infringed because the claim covers even trace amounts, undetectable trace amounts of the compound. And why isn't that similar here, that the X-rays are necessarily slightly divergent, which is conceded, and as a result of that slight divergence, there's undetectable magnification? Isn't that exactly the same thing which led the Court in Smith-Klein to find invalidity? Yes, Your Honor. That is exactly the same situation here. The prior art reference inherently has some trace amount of geometric, also called projection magnification, even after the beam in Jorgensen. So what led the Board, in your view, to go off the rails here? The Board didn't disagree with that, did it? Do you think that the answer is that they recast the claims from 1 to 10 to say it's something less than that? What's your theory of, I know your theory is not that we didn't lawyer it well enough to win, but I assume you made the same compelling arguments there that you made here. Why did the Board do what it did? Very good question, Your Honor. I believe there were a few issues. First, I believe the Board became distracted with disputes about the calculation as to the exact amount of divergence in the prior art that remained either before or after the collimation and changed then the focus from the binary question of whether there is any divergence to exactly how much, who presented the right formula, the right calculation. And that's an incorrect analysis here. They seem to say that undetectable amount doesn't count, but of course nobody showed them the Smith-Klein case. I agree with Your Honor. I believe the Board also paid unnecessary focus on language about the intent of the divergence, whether divergence within the Jorgensen reference was intended to provide some function, whether it was, so instead of simply looking at the presence, it was looked at as far as whether it was accomplishing was a word that was given a lot of focus, whether the projection in Jorgensen accomplishes. And then the language that caught my eye the use of the word enough divergence needed. Correct, Your Honor. There, it seems that there may have also been some lack of focus on what the projection magnification is. The patent owner had pointed to the output of the detector within systems and argued that if the divergence within Jorgensen is so small that it does not change the output of the detector from what the output would have been at exactly 1x, which is a physical impossibility, that effectively you can round down and treat it as if you have precisely 1x because the projection magnification did not create a different output. The patent makes clear, however, that projection magnification is something that exists before a detector is ever involved. It exists as a matter of physics. As the beam passes through space, projection magnification occurs in shadow puppets on a wall or projection slides on a slide projector. Whether there is a detector or the resolution of the detector is irrelevant to whether there is projection magnification. And so I think the board may have changed the claim limitation to require a projection magnification so high that it created a different output from the detector. And under the Smith-Klein case, that would improperly read out claim scope of some, even if infinitesimally larger than 1x, some still existing, impossible to completely remove type of projection magnification. But your claim is that it inherently includes the 1 to 10 in the claim? Yes, Your Honor. The language here is between 1 and 10 times. So between 1x and 10x. And we've pointed to this court's decisions confirming that when numeric ranges are recited in claims that they include the endpoints. Here, there does not seem to be a genuine dispute. It's impossible to achieve that actual endpoint of precisely 1x. But the case law confirming that the endpoint is included in the claimed range is very useful in confirming that 1.00000 etc., 1, is also within that claimed range of between 1 and 10. Well, I guess you could have a similar claim where the purpose of the magnification limitation was to make sure that there was some magnification that was detectable. And you might construe a claim under those circumstances to require detectable magnification or significant magnification. But that's not the purpose of this patent. The purpose of the patent is to reduce the magnification, to reduce the size of the device, right? That's exactly correct, Your Honor. The patent was allowed because of distinguishing from prior art that used high projection magnification. The patent explains that the magnification in this invention is shifted away from projection magnification and achieved instead by a separate stage, the optical stage, which uses a lens that allows for a more compact system. And so in the notice of allowance, the examiner identified the low projection magnification as a reason for allowance. That's also recited in a portion of the specification reciting a projection magnification below 2 as being preferable. And dependent claim 4, in fact, also recites that below 2 further restriction of the claimed range of projection magnification. So since I'm the least experienced patent jurist here, could you explain to me, please, if we accept your argument that the patent board misapplied the claim, is the remedy that this court looks at the claim and construes it, or is it a remand? Yes, Your Honor. The proper approach here, because claim construction is a matter of law reviewed by this court de novo, would be to confirm that under the undisputed facts that there is some trace amount of projection within the prior art because this is the only limitation that was that the board found the petitioner had not shown. The correct outcome is to reverse and find that claim 1 and its dependent claims addressed here. Has the board already gone through the other limitations? Yes, Your Honor. The board went through the other limitations, and this was the basis for this prior art reference, for the grounds based on the Jorgensen reference. Did they go through the dependent claims? Is it possible that the dependent claims have features in them which would change the result as to those claims? So the board did address dependent claims and rested its finding that petitioner had not shown unpatentability of those dependent claims on patent, the petitioner supposedly not having shown this one limitation. I understand that, but let me put the question differently. Did the parties have other issues with respect to the dependent claims? In other words, was the patentee arguing that the dependent claims were patentable even if the independent claim wasn't for other reasons? I do not believe that the board found with the patent owner on any such issue. They didn't address it. We're trying to decide whether under the hypothetical we remand or reverse. What I'm asking is, are there other issues not adjudicated by the board as to the dependent claims? I don't believe there are any. Of course, if the patent owner believes that there are some, they would have the opportunity to identify that. But as addressed in this appeal, the sole issue seems to have been this one limitation within independent claim one with respect to the Jorgensen-based grounds. Your answer to my question is? Reversal. But ask the other side to make sure. Of course. May I answer other questions? I believe that in looking at what projection magnification is, it's helpful to look at, for example, figure two of the patent. That's at Appendix 70. It illustrates portions of a beam coming from a source. It's simplified. It only shows three points within the source as sending out a beam. But it informs what projection magnification is. That figure and other disclosure within the specification formula, discussions of projection magnification in the context of what's called printing imaging, confirm that the projection magnification occurs before and frankly regardless of whether there is a detector or what that detector's resolution is. I would be happy to answer other questions. Otherwise, I would reserve time. Okay. We'll give you four and a half minutes for a bottle if you need it. Mr. Glitzenstein? Yes, Your Honor. Thank you. Good morning. You may have pleased the Court, Court Glitzenstein for the appellee and patent owner. I want to begin, Judge Dyke, with where you began, which is it is not a matter of undisputed fact in this matter that the parties agree that there is a small amount or any amount of divergence of the x-ray beams that impinge on the specimen in Jergensen. Okay. Before you get to that, do you agree that under SmithKline, if there is some amount of divergence and hence some magnification, that the Board was incorrect? If there is divergence, just to be specific, Your Honor, if there is divergence of the x-ray beams at the specimen, at the point where they pass through the specimen, then we agree that the consequence of that is that there would be some geometric magnification in the projection, the x-ray projection optics. And yes, given the correct construction of the claim, which is a number exceeding one. Even if it's undetectable. Even if it's undetectable. But, Your Honor, actually and I'm very glad that we started there because it helps me address a number of critical issues with regard to the record in this case. The Board's decision in this case, with respect to Jergensen, was based on a thorough and meticulous examination of all the evidence in connection with that record. And it led it to two conclusions. The first is that not only... I don't see the Board as finding that there's no magnification, just not that there's enough magnification. Your Honor, the Board found several things. The Board found, as a matter of factual findings with regard to Jergensen and plaintiff's evidence, that plaintiff failed to establish the presence of any magnification in the x-ray projection stage in Jergensen. The Board went further than that and actually found that we, the patent owner, through our expert, affirmatively demonstrated the absence of any such projection magnification. Now, with regard to the Court's statement about enough magnification, I think, in fairness, that statement needs to be read in the context of... It's wrong. It's wrong. It's a wrong claim construction. It's not a... Your Honor, with respect, it's not a claim construction. The statement... If we read that as a claim construction, it's wrong, right? Correct, Your Honor. And I would submit that the totality of the Board's opinion makes it very clear that they recognize that this issue was a binary one. They say repeatedly the question that divides the parties is whether or not Jergensen discloses any magnification in the x-ray projection stage. Whether or not. That is binary. The context of enough, the comment of enough was in their decision at page 26, which is also appendix 26. Changes none of this. When they set up the problem at 16 of the FWD against the same pagination as the appendix, they set it up as a binary question. They say the dispute about Jergensen, whether Jergensen inherently discloses projection magnification is really a dispute about the nature of Jergensen's x-rays. Whether or not the x-ray beam is divergent. They say that on 16. In substance, they repeat that on 18, 22, 37, and 38. But 38 is where, after 28 pages of meticulous examination of the record and the party's arguments, they conclude, again, two things. Number one, that the petitioner, Appellant, failed to demonstrate any divergence whatsoever of the x-ray beams as it passes, through the specimen in Jergensen. And secondly, but for example, on page 24, they say the x-rays that reach Jergensen's sample are essentially parallel. That's the wrong claim construction. But they're quoting there, isn't that correct? Well, Your Honor, I would respectfully submit that that is not a claim construction. They are quoting there from one of our experts, and notably, they follow that with a quotation from Dr. Bentley at the top of the page where they say, such x-rays are parallel when they reach the sample. And the essentially parallel that they quote from Dr. Arce is, of course, followed by the parenthetical IE, not divergent. Again, it's a binary evaluation of the evidence, and it's a binary application of the evidence to the claim. Now, the evidence here is, and this really is the critical and central point of distinction over the Smith-Klein-Beachin case we submit. In that case, the prior art patent, the 196 patent, discloses a method of manufacturing PHC anhydride that naturally results in the production of PHC anhydride. That's the opinion of 1344. The record evidence here does not only say that, that there's any natural consequence. The full disclosure of Jergensen shows that there is zero magnification in the x-ray projection stage. Not some, not enough, not a little bit, zero. And that is the math that the petitioner ignored in his petition. Well, so just to help me out a little, you refer to page 38, and the board says very little about this question other than to credit Dr. Bentley and Arce, and to discredit Dr. Kia. So I'm going back to what Dr. Bentley said, and isn't he the one, or was it Dr. Detman that said, nearly parallel? Dr. Arce, though, is what I think Judge Dyke referred to, x-ray being where the x-rays have been made to be parallel such that no meaningful divergence is present. I think the quote from prior was Dr. Arce stating that they're essentially parallel, i.e. not diverging, on page 24. But if I may, Judge Prost, if I could ask the court to look at page 33 of the FWD. This is Appendix 33. This is where the board, again, quite thoroughly, quite thoughtfully, says, notes that although it's the petitioner's burden of proof, they say, Pat Noner and Dr. Bentley presented an unrebutted analysis of Jergensen's disclosure relating to CCD pixel size that persuasively supports the absence of projection magnification. There's no suggestion at all that they had some gray area that they were thinking of around one. It's the absence. It's binary. It is zero. And in particular, it is the math that follows from the disclosure in Jergensen. Jergensen doesn't say what the x-ray source, it doesn't contain any disclosure about how the x-rays look as they are emitted from this very complicated detector. Dr. Bentley has even looked at that and said it's so complicated that that could create distortion. But what she, so we don't know what the x-rays look like coming out of Jergensen's source. We don't know what the columnator looks like in Jergensen. But we do know that Jergensen provides us with an example. And the example says that if you have a 24 micron on a side pixel at the detector, and if you have two-fold optical magnification, that means that that is 12 microns on a side at the specimen. And it's just the math. It is 12 microns times two times optical magnification, and that gives you 24 microns at the detector. And critically, she continues and says that can be true only if there is no additional magnification in the projection stage. None. We affirmatively disprove that Jergensen. Where did your witness say there was none? I see testimony where they say there's undetectable amounts, essentially parallel. I don't see testimony that there's none. In fact, I thought your witness said that, in fact, there was no such thing as completely parallel beams. These are two separate but related issues. But let me address, Judge Icke, your question first. I'm looking at the block quote in the middle of the FWD appendix page 33, the final sentence, that can be true only if there is no additional magnification in the projection stage. That testimony, Your Honor, is unrebutted. And the board here properly found that that is evidence that persuasively supports the absence of projection magnification. It's unrebutted evidence below. It is an aspect of the record that the appellant has not even addressed on appeal. The appellant's position with regard to this evidence in both briefing and what we heard today is that this is irrelevant and it's immaterial because it concerns what's at the end of the optical stage, which the claim has as a different piece. I've got to say I'm baffled. I mean, there is a lot of testimony, some of it cited on blue brief 11, that the witnesses said there's no detectable amount, essentially parallel, you wouldn't see it. And I don't see the board grappling with the question of whether there are undetectable amounts here and saying that there are not even undetectable amounts. The board grappled with the evidence that was presented to it. No, but answer my question. I've recited to you some of the evidence and there are statements that there's no such thing as a parallel. Where does the board find, address that testimony and say, well, there's a lot of testimony that there are no detectable amounts, but in fact we think there are no amounts at all. Where do they grapple with that? So one place is where I show you on 33. They also review Dr. Bentley's evaluation of the Jurgensen reference, but show me where they say that we've considered that testimony and we think there was nothing at all, as opposed to not enough or essentially parallel or whatever. Where do they say that? They say the mere possibility of additional magnification is not enough, but they don't seem to say, in my view, that there is no magnification. On page 24, in discussing Dr. Bentley's testimony, they say, they credit her testimony as in Jurgensen, the x-rays are parallel when they reach the sample. And then continuing on, they say, thus, Jurgensen does not disclose a magnification of the projection x-ray state. That's their review of the evidence. They continue on and ultimately decide to credit Dr. Bentley's testimony on the scope and content of the disclosure in Jurgensen over Dr. Kea's testimony, including, Your Honor, because Dr. Kea, and this leads to a second important issue on this appeal, Dr. Kea, in his original declaration, fundamentally misunderstood how Jurgensen... I understand that. Okay, but Your Honor, it goes to an issue of proof here, which is that the petitioner and appellant here hasn't even pointed to record evidence to show that the Jurgensen reference even includes an x-ray source that emits diverging beams. This is all way back at the beginning of Jurgensen. We don't know what x-rays that even creates. They say in their brief... Their argument is that as a theoretical matter, there is no such thing as an exact parallel beam and that, therefore, there is always inevitably some small amount of magnification. Your Honor, that is petitioner's false dichotomy. It is not the case that because if it's theoretically impossible, if, assuming if, it's theoretically impossible to have perfectly parallel beams, that does not lead to their conclusion, critically, it does not lead to their conclusion that the beams are necessarily diverging a slight amount. X-ray beams are not either perfectly parallel or slightly diverging. There's evidence in the record in the form of the Hayashi patent that we cite. You can have x-ray beams that are converging, that are far less than one in magnification. You can have x-ray beams that are curved with respect to one another. You can have x-ray beams where some go one direction and some go the other, and you don't have any sort of coherent issue. This is why Dr. Bentley says, also reflected in the board's FWD, that, in fact, the source in Jergensen, of which we know nothing about what his x-rays look like, would create a blurred image. Blurred is not magnified. It's just junk. That is an absolute false dichotomy, and it's not factually established in the record that you either have perfectly parallel beams or diverging slightly. That's not true. They can focus down. I think we're out of time. Okay. Thank you. Thank you, Roger. Mr. Lacker. Patent owner admitted in their reply at the lower proceedings at appendix 2465, footnote 3, that absolute theoretical parallelism cannot be achieved as a practical matter. That is an admission. But then, I mean, as you point out, you equate that, I think this is just what your friend was talking about, thus conceding that there is a theoretical parallelism that cannot be achieved as a practical matter. Jergensen inherently discloses an x-ray beam that diverges, and his answer is no. And I'm happy to answer your Honor's question. So they didn't concede the latter, they conceded the former. Well, I believe that they have conceded both, your Honor. There's no dispute that the earlier limitation of Jergensen, which recites an x-ray source generating a diverging x-ray beam, is satisfied. No dispute. At the point that the beam begins in Jergensen, it's diverging, it's spreading out. Patent owner has pointed to the physical collimator tube in Jergensen to argue that that collimation greatly reduces the degree of divergence. It's just a lead-wrapped brass tube. And the patent owner's expert, Dr. Bentley, admitted that as the length of collimation approaches infinity, the degree of divergence lessens so much that it's essentially parallel. If you had a lead-wrapped brass tube the length of the universe, you would have eliminated so much of the diverging angles within the beam that the portion of the beam that exits that tube would be so incredibly close to 1x that mathematically you can treat it as 1x. Of course, the lead-wrapped brass beam in Jergensen is not that long, and it only reduces the amount of collimation. There's our admissions from both of patent owner's technical experts. With respect to the point regarding the Hayashi reference, that is not a tube collimator. Hayashi is describing an entirely different device in Jergensen, in which a beam is reflected off of an angled mirror-like surface in order to change the angling of the beam and potentially create convergence. There is no evidence in the record whatsoever suggesting that Jergensen's lead-wrapped brass tube can create convergence. There is ample admissions from patent owner, from Dr. Bentley, from Dr. Aker, that the passing at Jergensen's x-ray beam, which begins as being diverging, once it passes through the tube, the outer, more diverging portions of that beam within the tube strike the tube's inner surface, thus reducing the degree of divergence. When the beam exits the tube, there will be some, at least, trace amount of divergence that remains. And did they, I mean, the problem is we've got a record and we've got experts, and the board credited the experts, their experts and not your expert. So are you saying that none of the experts actually said what you're saying now is not true? I mean, we're not going to take attorney argument as expert testimony. Two points, Your Honor. First, the experts themselves conceded that their language of parallelism or no divergence was actually referring to no meaningful divergence, essentially parallel. It was rounding down. Well, where did Bentley say it? Dr. Bentley said that. The board cites Dr. Arce as saying no meaningful divergence is present. But I didn't see any other, anything that Dr. Bentley said that would give you any givenness. Give me just a moment, Your Honor. I have some of these quotes going. Dr. Bentley at appendix 2272 described, any such undetectable magnification doesn't matter. You won't see it. I know, sorry, that's Dr. Aker describing Dr. Bentley. Let's see. Dr. Aker further describes that the cone angle is so small, no detectable geometric magnification exists. And the portions of Dr. Bentley's testimony that Patent Owner has pointed to, as Patent Owner described, were referring to whether the detector can detect. So that's going back to a claim construction question. She was not opining actually as to whether the beam itself was non-diverging, but whether at the point of detection, there was any detectable divergence based on the resolution of the CCD detector. I mean, at the bottom of page 10 of the blue brief, you quote Dr. Bentley as saying that's a very small angle and is small enough to be considered parallel. That's correct. Thank you. A colonnaded beam is essentially parallel. Yes, there were admissions from both experts. And again, from Patent Owner's own briefing, which we pointed out in the red brief, and I'm sorry, we pointed out in the blue brief, but went unanswered in the red brief, as to the fact that absolute theoretical parallelism cannot be achieved as a practical matter. But your friend says that that's a false equivalency between parallelism and divergence, if I understood it. When you change from the type of physical tube collimator that's at issue here in Jorgensen, and you instead look at entirely different systems, the item in Hayashi and another reference, which my friend in briefing combines multiple prior references, do not describe physical collimation. Again, what the experts have confirmed is the physical collimation is passing a beam through a tube. There's nothing suggesting there's anything in that tube, a lead-wrapped brass tube, which makes sense. In a laboratory, you'd want to reduce the amount of x-rays flying around to people. So you've caused the x-ray that exits the tube to have less divergence based on the length of the tube as compared to the x-ray beam entering. Would you like to think the more prudent course would be to remand it to the board, calling out these things and having them re-evaluate it based on clarity that something is not enough? If it's covered within the range, it's covered, and have them analyze it then? Well, I believe that based on the findings that have already occurred, that there's acknowledgment that with the board's language of the Jorgensen beam being essentially parallel, that that's sufficient fact to result in a reversal here. The board seemed to have adopted also the claim construction of requiring divergence such that the detector changes its output, which is another way, I believe, of getting at your Honor's point that any amount of divergence is divergence. I don't believe that further fact-finding at the board level is necessary. When the parties have the record before us with all of these admissions of essentially parallel, parallel if measured at infinity, no meaningful divergence, those are concessions by patent owner. Okay, thank you. Thank you. Thank both counsel. The case is submitted. That concludes our session for this morning.